515                         POWER OF ATTORNEY.

[Clarke Circuit Court, June Term, 1886.]

Williams, Stewart and Shauck, JJ.

*WILLIAM DIEHL v. ELIZABETH STINE ET AL.

1. PROOF OF POWER OF ATTORNEY, BY PAROL EVIDENCE.

Where parol evidence is relied on to prove a power of attorney alleged to have been lost, such evidence must be the best that the nature of the case admits of, provided it clearly and satisfactorily shows the existence, execution and so much of the contents of the supposed deed as will enable the court to determine the nature of the instrument.

2. POWER NOT TO BE DEFEATED BY PROOF OF FAILURE TO RECORD.

Where parties have executed a power of attorney, and under the authority thereof a deed has been duly executed, neither they nor their heirs or assigns can defeat the title of the grantee in said deed, his heirs or assigns, by proof that said power of attorney was not recorded as required by law.

APPEAL from the Court of Common Pleas of Clarke county.

STEWART, J.

This suit was originally commenced in August, 1876, by E. G. Coffin and Asa Whitehead, to foreclose a mortgage against Elizabeth and Christopher Stine, her husband, upon a lot of ground 50 feet wide off the east side of lot 214 of Dement's addition to the town (now city) of Springfield. To this petition Elizabeth Stine as well as her husband, Christopher Stine answered, admitting giving the notes, but denying that plaintiffs were *bona fide* holders thereof; alleging that the notes were given without consideration, by reason of the fact that William Diehl, the original payee who had conveyed to Elizabeth Stine the premises described in the mortgage by a warranty deed, had no title thereto, but on the contrary that the title was in the heirs of Henry Fisher. William Diehl was afterwards substituted as plaintiff in the case. The heirs of Henry Fisher were properly made parties to the suit, and an issue was joined upon the latter allegation of Elizabeth Stine's answer. Upon this issue the cause was presented to the court. It is admitted that the common source of title in this case was Henry Fisher, and the question is, is the title to these premises still in the heirs of Henry Fisher, or has it passed from them to the grantor of Elizabeth Stine. About the following facts in this case there is no controversy. That in the year 1857, Henry Fisher died in Springfield, Ohio, unmarried, childless and intestate. He left surviving him his mother, Dorothea Fisher, and three sisters, Mrs. Bier-

---

*The judgment in this case was affirmed by the Supreme Court, as Kragle v. Diehl, without report, March 8, 1892.

man, Mrs. Kragle and Mrs. Fenrick.  Dorothea Fisher, his mother, resided with him, and continued to reside in his house after his death.  Dorothea Bierman, his oldest sister, resided in Illinois.  Mrs. Kragle resided and still resides in Richmond, Virginia, and Sophia Fenrick was with her brother when he died, having removed from Baltimore to Springfield with her family, and was with him during his last sickness.  Shortly after her brother's death she left Springfield, and died in February, 1865, in Richmond, Va., leaving surviving her two children, Lewis and Emma D. Fenrich, now Emma D. Harra.  Henry Fisher died seized in fee simple of lots 212, 213, 214, 215, in the city of Springfield, comprising about two acres of ground, the property in controversy being part of these four lots.  On the 20th of November, 1860, Dorothea Fisher, said to have been acting under a power of attorney, sold and conveyed all of these premises, in consideration of eight hundred dollars, to George Kramer.  The power of attorney, if executed, was never recorded  Dorothea Fisher died January 31, 1861.  Her will bears date December 14, 1860.  She divided her property equally between her three surviving children.  George Kramer sold and conveyed to William Diehl lots 212 and 214.  In September, 1870, Diehl sold and conveyed to the defendant, Elizabeth Stine, the property described in the mortgage upon which suit was brought.  Dorothea Bierman having died intestate, her heirs conveyed their interest in the property to Maria Kragle, Lewis Fenrick and Emma D. Harra.  The power of attorney, if it existed, is lost, and there is no controversy but what the eight hundred dollars paid by George Kramer for this property at the time he purchased it, was the reasonable value of the premises.

The settlement of this question is within a very narrow compass.  In fact, it depends upon the answer of two questions, and possibly only one.  First, did the heirs of Henry Fisher authorize Dorothea Fisher, by power of attorney, to sell and convey their interest in Henry Fisher's estate?

If that question is answered in the affirmative, that is the end of this case. If it be answered in the negative, then arises the question:  Did they ratify that conveyance, made by Dorothea Fisher, by knowingly accepting the proceeds of that estate?  The defense that is sought to be made here—the failure of title of William Diehl in these premises—is set up by Mrs. Stine in her answer.  Upon her would rest the burden of proving the failure of title in William Diehl.  It seems to us, that the solution of these questions is simply the solution of a question of fact.

The testimony shows, that prior to 1857 Henry Fisher and his mother, Dorothea Fisher, were living upon this property; that they were engaged in gardening—taking the different vegetables they raised upon this property to market, in Springfield, and there selling them, as one of the witnesses testified, going there together as long as Henry Fisher lived.

Mrs. Bierman, during that time, appears to have visited at Henry Fisher's house, and Sophia Fenrick was there during the time that Henry was alive and during his last sickness, with her children, and for their benefit an addition was built to the house.

Dorothea Fisher was an old woman when Henry Fisher died, and subsequently to his decease we find that she still continued to cultivate this property, raising vegetables upon it, and taking them to market and selling them; but, being over 70 years of age, she was obliged within a short time, to give up the gardening of this property; and in 1860, three years after Henry's death, we find that this deed to George Kramer was executed for the consideration of eight hundred dollars.  It is in evidence here (and we think, fully explains the making of this deed) why the deed was made.  Dorothea Fisher had no interest whatever in this property.  The only persons interested in it were Mrs. Bierman, Mrs. Kragle and Mrs. Fenrick.  We are satisfied from the evidence, that they knew that Henry Fisher was the owner of this property, and they seemed to have had a proper regard and a proper love for their mother.  They knew, or must have known, that she was too old to work to support herself, and it is very probable,

then, that they agreed that she might sell this property for the purpose of obtaining and using the proceeds for her support and maintenance as long as she lived, which could only be for a short time. That after that time, Dorothea sold this property to Kramer for $800, and executed the deed therefor as attorney in fact for these sisters, and applied the proceeds to her own support. It is a fact that she loaned some of this money as soon as she received it, and that she had the note for it when she died. She held the other notes that were given for the purchase price of this property, in her possession until she died. Shortly before her death, January 22d, 1861, she wrote a letter to Mrs. Bierman, her daughter in Illinois. In reading this letter, we must bear in mind that we have not her original letter, but only a translation of the same. This is such a letter as a Christian mother would write to her daughter when she thought her life was short. In this letter she used this expression, " My things have I sold for eight hundred dollars. After my death you shall find out what pleasure you may enjoy." We say, that clearly tends to show that Mrs. Bierman knew that her mother was about to sell this property; and by this letter the information was conveyed to her that it had been sold, and that after her mother's death she was to receive the proceeds for it.

In 1861, in February, after the mother's death, we have a letter written by the Rev. Stroud to Mrs. Kragle, in Richmond, Va., with a request that that letter be shown to Mrs. Fenrick, the other daughter of Dorothea Fisher.

Much stress has been laid, in argument, upon the fact that the Rev. Stroud, speaks of the property as Mrs. Fisher's place—"her place." But we would call counsel's attention to the entire sentence in which that phrase occurs: " I suppose that you have heard that she had sold her place." Now that seems to indicate to us, that the Rev. Stroud, who knew of this transaction, wrote to this daughter and her sister upon the supposition that this information had already been conveyed to them that their agreement with their mother, that she might sell this place, had been carried out. In fact, we find, from the letter to Mrs. Bierman, that such information had been conveyed to that daughter by the use of this phrase " my things have I sold." This property was devoted by these children to their mother's support. It was to be her property and for her use, and it was for that special purpose they treated it, before she died, as her property, for her support and for that purpose only, and therefore it is spoken of in this way, and treated as her property. Now, then, was there any power of attorney executed authorizing Dorothea Fisher to convey this property, for it is assumed that there was by the recitals of this deed. Several of the witnesses in this case, particularly the heirs of Henry Fisher, have been examined more than once. There are statements found in their testimony one way, and statements another way. In examining their testimony, we must consider the lapse of time which has ensued since the transaction occurred; yet it clearly appears that all of them, either in their depositions (that is, Mrs. Bierman and Mrs. Kragle, for Mrs. Fenrick's deposition is not here), or by admissions to other parties, have stated that they did give to their mother some authority to sell this property. Now, unless they did do this, unless there was some such authority given by these heirs to their mother as would amount to a power of attorney, we have only the other hypothesis which has been argued, and argued strenuously by counsel for the heirs, that this paper, which purported to be a power of attorney, was a forgery.

That such a paper existed there is no manner of doubt. We do not understand counsel to claim that there was not in existence, at the time this deed was drawn, a power of attorney purporting to be signed and executed by these heirs; for the contrary claim would presume either gross negligence or willful criminality upon the part of the draftsmen of this deed, and we do not think it is necessary to defend him against any or either of these aspersions. Now then, if there was a forgery, who concocted it and carried it out? We must presume that either

19    C C    1

the Rev. Stroud did it, or Dorothea Fisher did it, or both together; and we think that the statement of that proposition, in view of the character of those parties as it is shown in the evidence before us, is a refutation of the claim. We are referred to the case of Gillmore v. Fitzgerald, 26 O. S., 171, in order to support the claim of counsel for the heirs, that there is before us no proof of the execution of any power of attorney,—granting that the paper was signed and that the paper was before the draftsmen of the deed,—there is nothing in the evidence before us, it is insisted, to show us that this paper was properly signed and properly executed. This decision is to the effect that where parol evidence is relied on, such evidence must clearly and satisfactorily show the existence of a supposed deed. On examination of the case of Gillmore v. Fitzgerald, 26 O. S., 171, we learn that the witnesses, who were produced to testify as to the execution of that deed and as to its contents, were witnesses not at all familiar with legal documents. Again the testimony was adduced within a very few years, one or two, subsequent to the time when it was claimed that the deed was executed. In this case the conditions are different. We have a lost paper, the contents of which, and the effect of which, are sought to be proved : executed in 1860, twenty-six years ago. and it seems to us that we must examine the testimony adduced, as to the contents of that paper, in the light of all the circumstances of the case, and not that testimony must be adduced before us, determining with absolute certainty what the contents of the document were ; who the witnesses were, and who the officer was before whom the acknowledgment was taken. It is only necessary that the best evidence which the nature of the case will admit of, must be adduced. We have before us the admissions of these heirs as to some paper having been signed before an officer. We have the testimony of the draftsman of the deed, who, upon the receipt of this paper, admitting that he was not familiar with such a paper, examined it as a lawyer and examined the authorities to see whether this instrument was properly executed, so as to convey to the grantee therein the power to convey the premises therein described, and upon that examination he found that there was before him, a proper, legal and sufficient power of attorney. He says, upon his examination as a lawyer, that there was a proper and properly executed power of attorney, and that the description in the deed was a copy of the description in the power of attorney. We therefore think, that the conclusion is irresistible that this power of attorney did exist, and that it was properly executed, and that the deed, executed in pursuance thereof, was such a deed as conveyed the title to this property to George Kramer. Now, it is said, that this power of attorney was not recorded, and we are cited to the section of the statutes that provides that a power of attorney shall be recorded before a deed conveying the property is recorded. We hardly think that these heirs are in a position to claim any advantage from that defect. If they executed this power of attorney, and if this deed was executed to George Kramer in pursuance thereof, it matters little to them whether a record was made of that power of attorney or not. We further find, that these parties received the purchase money from this land. Every dollar of this consideration money went into the hands of Dorothea Fisher, and every dollar of it was distributed to these heirs ; we think they received it knowing exactly where it came from ; that it was the proceeds of these lots in Springfield which belonged, in his lifetime, to Henry Fisher.

A decree will be entered in this case for the plaintiff.

F. M. Hagan, for plaintiff in error.

W. H. West, Geo. Spence and A. H. Gillett, for defendant in error.